Colby B. Springer (214868)
cspringer@polsinelli.com
Hannah T. Yang (311814)
hyang@polsinelli.com
**POLSINELLI** *LLP*
Three Embarcadero Center, Suite 2400
San Francisco, California 94111
T: 415.248.2100
F: 415.248.2101

Attorneys for Plaintiff Anza Technology, Inc.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anza Technology, Inc. <br><br> Plaintiff, <br> v. <br><br> Mushkin, Inc., a Colorado corporation, d/b/a Enhanced Network Systems, Inc.; and Avant Technology, Inc., a Nevada corporation, d/b/a Mushkin Enhanced MFG <br><br> Defendants. | Case No. 2:17-cv-00656-WBS-EFB <br><br> **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** <br><br><br> **DEMAND FOR JURY TRIAL** |

In accordance with Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Anza Technology, Inc. ("Anza" or "Plaintiff"), by and through its undersigned counsel, complains and alleges against Defendant Mushkin, Inc. d/b/a/ Enhanced Network Systems, Inc. and Defendant Avant Technology, Inc. d/b/a Mushkin Enhanced MFG ("Defendants") as follows through this First Amended Complaint for Patent Infringement:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the laws of the United States relating to patents, 35 U.S.C. § 101, et seq., including, without limitation, 35 U.S.C. §§ 271 and 281. Plaintiff Anza seeks a preliminary and permanent injunction and monetary damages for patent infringement.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a) and pursuant to the patent laws of the United States of America, 35 U.S.C. § 101, *et seq.*

3. Venue properly lies within the Eastern District of California pursuant to the provisions of 28 U.S.C. §§ 1391(b), (c), and (d) and 1400(b). On information and belief, Defendants conduct substantial business directly and/or through third parties or agents in this judicial district by selling and/or offering to sell the infringing products and/or by conducting other business in this judicial district. Furthermore, Plaintiff is informed and believes that Defendants engage in business in this district, and that Plaintiff has been harmed by Defendant's conduct, business transactions and sales in this district.

4. This Court has personal jurisdiction over Defendants because Defendants transact continuous and systematic retail business within the State of California. This Court has personal jurisdiction over the Defendants because Plaintiff is informed and believes that the Defendants' infringing activities, including, without limitation, the making, using, selling and/or offers for sale of infringing products occur in the State of California. In particular, Defendants' infringing products are sold at local retail stores within the District at, among others, Staples, Best Buy and Target. Finally, this Court has personal jurisdiction over Defendants because, on information and belief, Defendants have made, used, sold and/or offered for sale their infringing products and placed such infringing products in the stream of interstate commerce with the expectation that such infringing products would be made, used, sold and/or offered for sale within the State of California.

-2-
FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT
2:17-cv-00656-WBS-EFB

5. Upon information and belief, certain of the products manufactured by or for Defendants have been and/or are currently designed and/or offered for sale by Defendants through an in-house sales and marketing team.

## PARTIES

6. Plaintiff Anza is a corporation organized and existing under the laws of the State of California. Anza has a principal place of business at 4121 Citrus Avenue, Suite 4, Rocklin, California 95677. Anza is a designer, manufacturer, and seller of products directed to the manufacture and assembly of electronics including the bonding of electrostatic-sensitive devices.

7. Defendant Mushkin, Inc. ("Mushkin") is a corporation organized and existing under the laws of the State of Colorado. Mushkin maintains a regular and established place of business in San Juan Capistrano, California. Mushkin at times is believed to do business as Enhanced Network Systems, Inc.

8. Up to and including parts of 2012, Mushkin was involved in the making, using, selling, importing, and offering for sale computer memory products, including those at issue with respect to the '927 Patent as is further alleged below.

9. Defendant Avant Technology, Inc. ("Avant") is a corporation organized and existing under the laws of the State of Nevada. Avant maintains a regular and established place of business in Pflugerville, Texas. Avant at times is believed to do business as Mushkin Enhanced MFG.

10. Avant is, as of April 1, 2012, the sole aggregator of all Mushkin-brand memory modules and board products. This includes but is not limited to those products previously sold by Defendant Mushkin. Avant became the aforementioned aggregator of Mushkin-brand products by virtue of Avant having acquired certain assets of Defendant Mushkin in accordance with an asset purchase agreement dated April 1, 2012. That asset purchase agreement included but was not limited to rights to sell under the Mushkin-brand name, marks, patents, and to retain certain employees that previously worked in Defendant Mushkin's memory component sales business. That purchase agreement likewise included the sale of the entirety of Defendant

-3-
FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT
2:17-cv-00656-WBS-EFB

Mushkin's electronic memory component sales business.  Plaintiff Anza is informed and believes and thereon alleges that said memory component business previously operated by Defendant Mushkin was located in Pflugerville, Texas.

11. Reproduced below is a true and correct photo taken from Avant's website on July 12, 2017.



12. The foregoing photo reflects the Mushkin Enhanced brand:

.

13. The foregoing photo further reflects the Enhanced Network Systems brand:



14. Plaintiff Anza is informed and believes and thereon alleges that Mushkin and Avant have had and continue to have a business relationship that includes the use of the aforementioned Pflugerville, Texas, facility as is reflected by the foregoing co-branding.  This Texas facility is believed to have once owned by Defendant Mushkin.  This Texas facility is now believed to be owned by Defendant Avant.

15. The ongoing relationship by and between Defendant Mushin and Defendant

Avant is also believed to include Mushkin's sale and distribution of computer memory products —including the products at issue below with respect to the '927 Patent—for which Defendant Avant is involved in the making, using, selling, importing, and offering for sale of the same.

## **BACKGROUND**

16. Defendants Mushkin and Avant at one time or another each acquired, designed, manufactured, assembled, or imported products with Integrated Circuit ("IC") chips. The IC chips are electrostatic discharge ("ESD") sensitive devices. Assembly of Defendants' products with these ESD sensitive IC chips requires certain techniques and methods to guard against ESD events that have catastrophic consequences on IC chips. These certain techniques and methods infringe the Asserted Patent, described in further detail below.

17. ESD damage is a well-known phenomenon in the electronics industry and broadly-accepted standards have been developed by industry-recognized standards-setting organizations (such as ANSI, JEDEC, the IEC and/or the ESDA) (cumulatively "ESD-Standards") to minimize the risk of damage to ESD sensitive devices during assembly and manufacture. Each of the aforementioned industry standards thus requires the use of manufacturing tools made of dissipative materials having approximately the same resistance values in connection with handling ICs that are particularly sensitive to ESD events. These resistance ranges are low enough to prevent a discharge of a charge to an ESD sensitive device such as the Accused Products, but high enough to avoid current flows that may damage the device.

18. Failing to adhere to such standards could otherwise lead to ESD events during the bonding process that could damage the ICs and render them defective and/or unusable. Today, as little as five volts of an ESD event is enough to permanently change the structures in ESD sensitive devices, which include, but are not limited to, ICs, Printed Circuit Boards ("PCBs") and other electronic components.

19. Complementary Metal-Oxide Semiconductors ("CMOS") are a type of IC commonly used in microprocessors, microcontrollers, static RAM and other digital logic circuits.

CMOS ICs are known to be ESD sensitive and are highly susceptible to damage caused by ESD events.

20. CMOS chips are typically cut from a wafer of silicon into individual pieces, called "dies." The die is picked up by a tool and placed on a substrate or package for placement on a PCB as shown below in Fig 1.



Figure 1. Die picked up by tool.

21. A common method of packaging CMOS ICs for handling and mounting on PCBs is the Ball Grid Array mounting system (or a variation thereof *e.g.* FBGA, TBGA, PBGA) (cumulatively referred to herein as "BGA"). An individual CMOS IC wafer is inserted in a package that uses "solder balls" as conduits of electrical connectivity. ICs with BGA mounting packages are thereafter surface mounted to PCBs via the array of solder balls.

22. Flip chip bonding techniques are commonly used in fabricating BGA packaged ICs and in placing BGA components on PCBs. Flip chip microelectronic assembly is the direct electronic connection of facedown electronic components onto substrates, circuit boards, or carriers by means of conductive bumps on the BGA IC package.

23. During the process of bonding a BGA IC to a PCB, the IC comes in contact with tools that place it on the PCB with the solder balls facing down. Heat is then applied causing the solder balls to melt resulting in the bonding of the IC and BGA package to the surface of the

PCB. Naturally occurring electrostatic charges (of varying degrees) build up when the mounting tools come in contact with the die and when it is placed in the package. Electrostatic charges can also build up when the die in the BGA package is placed in a tray or on a tape for transport, and also when it is removed from the transport vessel and placed on a PCB for bonding.

24. Essentially, every time an ESD sensitive device is handled, electrostatic charges to one degree or another are generated. Any type of movement can charge an ESD sensitive device. Tribocharging, for example, commonly occurs in automated assembly lines with the rubbing of conveyor belts, or when ICs and product parts touch carrier trays or tapes. Electrostatic charges are therefore created at several places in an automated production line including but not limited to 1) during the application of conductive material, 2) during pickup and placement of ICs, and 3) during testing of the assembled devices.

25. Since automated production line processes generate electrostatic charges, caution has to be taken to avoid damaging ESD sensitive components when they are moved, picked up and placed in contact with one another. For these reasons, ESD sensitive devices that come in contact with automated handling equipment during the manufacture of the Accused Products should be made of electrostatic dissipative material and a resistance to ground where the ESD sensitive devices are contacted.

26. As a result, Plaintiff is informed, believes and thereon alleges that Defendants Mushkin and Avant use specific design, engineering, and manufacturing practices in making or having previously made the Accused Products to minimize the costs resulting from damaging ESD events. Further, Plaintiff alleges that Defendants Mushkin and Avant specify and/or direct or have specified and/or directed that the Accused Products be assembled or manufactured in ways that meet or exceed ESD-Standards for reducing the risk of damage to ESD sensitive devices.

## ACCUSED PRODUCTS

27. The Accused Products with respect to Defendant Mushkin and Defendant Avant, for purposes of the asserted patent, include but are not limited to BGA packaged ICs and PCBs that to which the BGA packaged ICs are mounted. The Accused Products therefore include but are not limited to the following BGA packaged ICs: REDLINE, BLACKLINE, RADIOACTIVE, STEALTH, SILVERLINE, PROLINE, ESSENTIALS, NOTEBOOK MEMORY, STRIKER, REACTOR, TRIACTOR, CHRONOS, CATALYST, PROSPEC, ATLAS, and SCORPION (the "Accused Products").

28. The Accused Products have at one time or another—and within the relevant statute of limitations time period—been made, used, sold, manufactured, imported, or offered for sale by Defendant Mushkin.

29. The Accused Products have at one time or another—and within the relevant statute of limitations time period—been made, used, sold, manufactured, imported, or offered for sale by Defendant Avant.

30. The Accused Products utilize BGA ICs that are bonded to PCBs. As explained above, in order to minimize the risk of an ESD event, BGA-packaged ICs are manufactured using processes and methods that infringe at least independent claims 1, 14, and 16 of the '927 patent. Therefore, Plaintiff is informed, believes and thereon alleges that Defendants specify or specified the use of BGA ICs for use in the Accused Products. Plaintiff is further informed, believes, and thereon alleges that the Accused Products are manufactured or have been manufactured on assembly lines that utilize processes and methods taught by independent claims 1, 14, and 16 of the '927 patent to reduce the risk of damage from ESD events.

31. Furthermore, the ICs in the Accused Products are highly sensitive to ESD events as evidenced by the charge load tolerance specifications promulgated by their manufacturers.

## THE ASSERTED PATENT

32. On October 24, 2006, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 7,124,927 entitled "FLIP CHIP BONDING TOOL and BALL PLACEMENT CAPILLARY" (the "'927 patent"). Steven F. Reiber is the patent's sole named inventor and Plaintiff is owner, by assignment, of the entire right, title and interest in and to the '927 patent and vested with the right to bring this suit for damages and other relief. A true and correct copy of the '927 patent is attached hereto as Exhibit A.

## COUNT ONE

### INFRINGEMENT OF THE '927 PATENT BY DEFENDANT

33. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 32 above.

34. Defendants Mushkin and Avant have, since at least the filing of the original complaint, had knowledge of infringement of the '927 patent. Defendants Mushkin and Avant have each infringed, or is currently infringing, the '927 patent.

35. Plaintiff is informed, believes and thereon alleges that the Accused Products directly, or alternatively under the doctrine of equivalents, infringe each of the limitations of independent claims 1, 14, and 16 of the '927 patent in violation of 35 U.S.C. § 271(a) and (g) when Defendants import into the United States or offer to sell, sells, or uses within the United States a product which is made by the processes described herein. Defendants also violate 35 U.S.C. § 271(a) to the extent that it conducts such infringing activity in the territory of the United States.

36. Furthermore, Defendant Avant has at one time or another purported to be a JEDEC Member, claiming that "[its] in-house engineers utilize JEDEC . . . to build innovative module solutions that match today's computer performance standards." See Mushkin Certifications webpage, attached hereto as Exhibit B. Plaintiff is therefore informed, believes and thereon alleges that Defendant Avant and/or its contract manufacturer assembles the Accused Products, in compliance with one or more ESD-Standards, such as JEDEC, which

employs a method of ESD control that infringes independent claims 1, 14, and 16 of the '927 patent. On information and belief, Defendant specifies that BGA ICs are used in the Accused Products. Defendant Mushkin is believed to have previously engaged in identical conduct before selling its memory business to Defendant Avant, which now infringes as set forth above. Defendant Mushkin nevertheless resells and distributes products that otherwise infringe as set forth above.

37. In following conventional industry practices, tools are used in the process of manufacturing or assembling the Accused Products to surface mount and bond BGA ICs to PCBs. Plaintiff is informed and believes and thereon alleges that during the assembly or manufacture of the Accused Product, the Defendants or their contract manufacturer use or have used tools with tips that are specially designed to reduce the risk of damage to BGA ICs from ESD events. Specifically, Plaintiff is informed, believes and thereon alleges that Defendants comply with or have complied with reasonable and prudent ESD-Standard practices and techniques in the manufacture or assembly of the Accused Products to reduce the risk of ESD events through the use of electrically dissipative tool tips, which reduce sudden discharges of electrostatic current into the BGA ICs that are being bonded to PCBs in the Accused Products, as taught by independent claims 1, 14, and 16 of the '927 patent.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment as follows:

1. That Defendants have infringed the Patent-in-Suit;

2. Compensation for all damages caused by Defendants' infringement of the Patent-in-Suit to be determined at trial;

3. A finding that this case is exceptional and an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

4. Granting Plaintiff pre-and post-judgment interest on its damages, together with all costs and expenses; and,

5. Awarding such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

Dated:  September 6, 2017             POLSINELLI LLP

By:  /S/ COLBY B. SPRINGER
Colby B. Springer (SBN 214868)
cspringer@polsinelli.com
Hannah T. Yang (SBN 311814)
hyang@polsinelli.com
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111

Attorneys for Plaintiff
ANZA TECHNOLOGY, INC.