# UNITED STATES DISTRICT COURT

# DISTRICT OF COLORADO

ANZA TECHNOLOGY, INC.,                    CASE NO.: 17-cv-03135-MEH

           Plaintiff,

v.

MUSHKIN, INC., a Colorado corporation,
d/b/a ENHANCED NETWORK
SYSTEMS, INC.,

           Defendant.

---

### DEFENDANT MUSHKIN, INC.'S MOTION TO DISMISS PLAINTIFF ANZA TECHNOLOGY, INC.'S SECOND AMENDED COMPLAINT

---

D. Scott Hemingway
Hemingway & Hansen LLP
1700 Pacific Ave., Suite 4800
Dallas, TX 75201
T: 214-292-8300
shemingway@hh-iplaw.com

Thomas S. Rice
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave, Suite 700
Denver, CO 80210
T: 303-320-0509
trice@sgrllc.com
Attorneys for Defendants

# TABLE OF CONTENTS

                                                                                      **Page**

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................. 3

        A.      The Parties ............................................................................................. 3

        B.      Anza's Original Complaint Alleged Claims of Infringement Against
                Mushkin Based Solely on the '927 Flip Chip Patent .................................. 4

        C.      Anza's First Amended Complaint Also Alleged Claims of Infringement
                Against Mushkin Based Solely on the '927 Flip Chip Patent ..................... 5

        D.      Anza Files a Second Amended Complaint, Dropping its Allegations of
                Infringement of the '927 Flip Chip Patent After Over a Year, and Instead
                Alleging Claims of Infringement Based on the '479 and '864 Patents ............. 6

        E.      The Honorable Judge Koh of the Northern District of California
                Concluded that Anza's New Patent Infringement Claims Constitute a
                "Whole New Case" When Anza Pulled This Same Maneuver in a Separate
                Case ...................................................................................................... 8

II.     ARGUMENT .................................................................................................... 9

        A.      This Court Should Dismiss the SAC under Rule 12(b)(6) Because Anza
                Has Failed to State a Claim for Which Relief Can be Granted, as "Method
                of Use" Claims Cannot be Asserted Under Section 271(g) as a Matter of
                Law. ...................................................................................................... 9

        B.      The Second Amended Complaint Does Not Relate-Back to the Date the
                Original Complaint Was Filed .............................................................. 11

                1.      *An Amendment Adding a New Patent Will Only Relate-Back to the
                        Original Complaint if New Patent is "Part and Parcel" of the
                        Original* ..................................................................................... 11

                2.      *The New Patents are Not "Part and Parcel of the '927 Patent* ........... 13

        C.      This Court Should Dismiss the SAC under Rule 12(b)(6) Because Anza's
                Damages are Time-Barred, and Thus Anza Has Failed to State a Claim for
                Which Relief Can be Granted .............................................................. 16

III.    THE COURT SHOULD DISMISS THE SAC FOR LACK OF SUBJECT
        MATTER UNDER RULE 12(B)(1) BECAUSE ANZA AS FAILED TO
        RAISE A JUSTICIABLE CASE OR CONTROVERSY ................................. 17

IV.     ALTERNATIVELY, ANZA'S COMPLAINT IS SUBJECT TO
        DISMISSAL UNDER RULE 56 .................................................................. 18

V.      CONCLUSION ............................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

Page

**Federal Cases**

*Allergan, Inc. v. Alcon Labs.*,
    324 F.3d 1322 (Fed. Cir. 2003) ........................................................................ 18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................... 18

*Anza Technology, Inc. v. Toshiba America Electronic Components, Inc. et al.*,
    No. 5:17-cv-07289 (N.D. Cal. filed Dec. 22, 2017) .............................. 8, 11, 13

*Bayer AG v. Housey Pharm., Inc.*,
    340 F.3d 1367 (Fed. Cir. 2003) ........................................................................ 10

*Cardiovascular Imaging Sys. v. Bos. Sci. Corp.*,
    NO. C 93-20902 (RMW), 1994 U.S. Dist. LEXIS 6722 (N.D. Cal. Apr.
    26, 1994) ................................................................................................. 12, 13, 15

*Collezione Europa U.S.A., Inc. v. Amini Innovation Corp.*,
    Civil Action No. 06-4929 (GEB) (ES), 2009 U.S. Dist. LEXIS 76411, at
    *8 (D.N.J. Aug. 26, 2009) ........................................................................ 12, 13, 15

*Genentech, Inc. v. Insmed Inc.*,
    436 F. Supp. 2d 1080 (N.D. Cal. 2006) ............................................................ 19

*Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-07-06222 RMW,
    2008 U.S. Dist. LEXIS 109786, at *9 (N.D. Cal. May 5, 2008) ...................... 12

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995) .......................................................................... 18

*Illinois Tool Works v. Foster Grant Co.*, Inc.,
    395 F. Supp. 234, (N.D. Ill. 1974),
    aff'd 547 F.2d 1300 (7th Cir. 1976) ............................................................ 11, 12

*In re Mullaney*,
    179 B.R. 942 (D. Colo. 1995) ........................................................................... 15

*KEARNS v. GMC, Civil Action No. 93-966-A, 1996*
    U.S. Dist. LEXIS 21981, at *4-5 (E.D. Va. Dec. 31, 1996) ........................... 16

*Korody-Colyer Corp. v. General Motors Corp.*,
    828 F.2d 1572 (Fed. Cir. 1987) ........................................................................ 11

*Mallinckrodt Medical Inc. v. Nycomed Imaging AS*,
    49 U.S.P.Q. 2d 1474 (E.D. Mo. 1998) ............................................................. 12

*Mann Design Ltd. v. Bounce, Inc.*,
    138 F. Supp. 2d 1174 (D. Minn. 2001) ............................................................ 12

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007)...................................................................... 18

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005)...................................................................... 10

*Rohner v. Union P. R. Co.*,
    225 F.2d 272 (10th Cir. 1955) ...................................................................... 16

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
    754 F.2d 345 (Fed. Cir. 1985)...................................................................... 16

*Synaptic Pharm. Corp. v. MDS Panlabs, Inc.,*
    265 F.Supp. 2d 452 (D. N.J. 2002) ................................................................ 9

*Warth v. Seldin*, 422 U.S. 490
    95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)...................................................... 18

*Yangaroo v. Destiny Media Tech,*
    720 F.Supp.2d 1034 (E.D. Wisc. 2010)........................................................ 10

**Statutes**

28 U.S.C. § 1400(3) ...................................................................................... 4

28 U.S.C. § 1400(b) ...................................................................................... 4

35 U.S.C. §  271(g) ................................................................................... 9, 10

35 U.S.C. § 271(g) .................................................................................... 9, 16

35 U.S.C. § 281 .............................................................................................. 17

35 U.S.C. § 283 .............................................................................................. 17

35 U.S.C. § 284 .............................................................................................. 17

35 U.S.C. § 285 ................................................................................................ 8

35 U.S.C. § 286 .................................................................................... 3, 15, 17

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................. 1

Fed. R. Civ. P. 12(b)(6).............................................................................. 1, 3

Fed. R. Civ. R. 15(c) ................................................................................ 2, 15

I.    **INTRODUCTION**

Defendant Mushkin, Inc. ("Mushkin") moves, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), to dismiss Plaintiff Anza Technology, Inc.'s Second Amended Complaint ("SAC") for patent infringement. The Second Amended Complaint should be dismissed because: (1) the asserted claims under Section 271(g) of the Patent fail as a matter of law, and the SAC's infringement claims are baseless because Anza knows that Mushkin never wire bonded chips or used wire bonding tips; (2) the new patent claims against Mushkin in the SAC do not "relate back" to the patent claims in Anza's Original and First Amended Complaints, which means the new patent infringement claims directed to new patents are time-barred; and, (3) Anza has failed to plead a redressable case or controversy under the Patent Act.

On June 8, 2018, Anza filed a SAC that abandoned all its previous claims of infringement related to the sole patent-in-suit (U.S. Patent No. 7,124,927 or '927 Patent), which had been dismissed by this Court on May 17, 2018 (admitted by Anza's counsel as not viable claims, Docket No. 72, Exhibit 7).  The claimed subject matter in the '927 Patent is directed to "flip chip" capillary bonding systems, and the Applicant first introduced "flip chip" capillary subject matter into their chain of applications by a Provisional Application Serial No. 60/503,267, filed on September 15, 2003.  *Exhibit 2, Provisional No. 60/503,267 (first mention of "flip chip" by Applicant).*  These prior patent infringement claims were filed and maintained by Anza for over a year even though Anza knew that it had sued the wrong party, and Anza had been notified that there was no infringing activities conducted by Mushkin relating to any "flip chip" capillary bonding systems covered in the claims in the '927 Patent.  *Exhibit 3, Email to Mr. Springer, Sept. 14, 2017; Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment).*

In its SAC, Anza now asserts claims of infringement of two entirely new patents (U.S. Patent No. 6,354,479 or '479 Patent, and U.S. Patent No. 6,651,864 or '864 Patent), each of which cover completely different subject matter that is unrelated to "flip chip" capillary bonding systems.  *Exh. 1, Patent Front Pgs.*  Anza's latest allegations in the SAC include claims under Section 271(g) relating to "methods of use" (which are legally flawed and unsupported as a matter of law), and Anza also claims that Mushkin directly infringed the wire bonding tools and methods in the '437 Patent and the '864 Patent when Mushkin allegedly wire bonded IC chips. Apart from asserting legally flawed Section 271(g) claims, Anza knows that Mushkin bought off-the-shelf products that were fully encapsulated in plastic and pre-bonded to circuit boards,

1

which means Anza knows that Mushkin never used wire bonding tips and never wire bonding IC chips. *Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment), Declaration of Mr. Stathakis.* These new infringement claims should be dismissed.

Overall, Mushkin could not have been "put on notice" that Anza would switch its claims from "flip chip" infringement allegations to significantly different "wire bonding" allegations covered by entirely different patents when reviewing the Original or First Amended Complaints. The current allegations of patent infringement in the SAC are significantly different compared to the allegations of "flip chip" patent infringement conduct set forth in the Original and First Amended Complaint.

Flip chip technology is not, and was not, part of the '479 Patent or the '864 Patent when those applications were filed or issued. The '479 Patent was issued on March 12, 2002 – more than a year and a half before "flip chip" subject matter was first claimed to have been invented by the inventor in the '927 Patent (first filing, Sept. 15, 2003, Exhibit 2), and the '864 Patent was already on file (filed December 31, 2001) more than two years before "flip chip" subject matter was first claimed to have been invented by the inventor in the '927 Patent (first filing, Sept. 15, 2003, Exhibit 2). These earlier '479 and '864 Patents are unrelated to, do not claim, and cannot support, the "flip chip" claimed subject matter in the '927 Patent because neither of these two earlier patents make any mention of the later invented "flip chip" capillary bonding tool or system.

Because the latest infringing activities are significantly different from that set forth in the Original or First Amended Complaint, Mushkin could not have been "put on notice" that Anza would claim infringement of distinctly different patents by its review of the Original and First Amended Complaint. Anza knows that the Original and First Amended Complaints did not provide notice that the new claims would be made under the '479 Patent and the '864 Patent because Anza sent Mushkin's counsel a separate letter long after the Original and First Amended Complaint indicating to Mushkin, for the first time, that additional claims may be made under the '479 and '864 Patents – a letter that would have been unnecessary if the Original and First Amended Complaint had "put" Mushkin "on notice" of infringement of the '479 and '864 Patents. *Exhibit 5, Mr. Springer Ltr., p. 1.* For the reasons set forth herein, the SAC amounts to a "whole new case" against Mushkin that does not "relate-back" to the date the Original Complaint was filed under Fed. R. Civ. R. 15(c).

The filing date that should be accorded the new claims of patent infringement should be Juke 6, 2018. Under 35 U.S.C. §286, Anza is limited to damages related to infringement occurring within the six-years prior to the date the SAC was filed. In other words, Anza is limited to damages occurring on or after June 8, 2012. However, as of April 1, 2012, Mushkin, Inc. had divested itself of its Mushkin memory business (see Exhibit 9). This divestiture occurred before the six year damages limitation window, which is why Anza pled the factual basis for its new patent infringement claims was explicitly limited to events that occurred prior to April 1, 2012, *over* six years before the filing of the SAC. *See* SAC, DE No. 75, ¶53 and 62.

Without any relation back, however, the SAC must be dismissed because it fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), and all of Anza's asserted damages are completely time-barred. Additionally, Anza does not allege any continued or ongoing infringement justifying injunctive relief. Anza has, thus, suffered no cognizable injury because it is not entitled to any statutory relief under the Patent Act. The SAC does not assert a justiciable controversy under Article III, and this Court lacks subject matter jurisdiction to adjudicate the SAC under Rule 12(b)(1).

## II.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiff Anza Technology, Inc. ("Anza") is an alleged "designer, manufacturer and seller of products directed to the manufacture and assembly of electronics, including the bonding of electrostatic-sensitive devices." Docket No. 75: SAC ¶ 6. Defendant Mushkin, Inc. (under its dba ENS) is a Colorado corporation that has been in the business of wholesale distribution of IT network server hardware since April 2012. Docket No. 75: SAC, ¶ 7.

From 1996 to 2012, Mushkin was involved in the sale "pre-assembled" off-the-shelf performance computer products. Docket No. 75: SAC, ¶ 8. On April 1, 2012, Mushkin, Inc. sold all rights to do business under the "Mushkin" brand name to Avant Technology, Inc. ("Avant"), a Texas-based company. Docket No. 75: SAC, ¶ 9; Exhibit 9. The 2012 Asset Sale included the entirety of Mushkin's electronic memory component business, which was sold to Avant Technologies, Inc., which established a new dba Mushkin Enhanced MFG. *Id.*

### B.    Anza's Original Complaint Alleged Claims of Infringement Against Mushkin Based Solely on the '927 Flip Chip Patent

Anza filed its Original Complaint for patent infringement on March 28, 2017, mistakenly naming "Mushkin, Inc., d/b/a Mushkin Enhanced MFG" as the sole defendant. See Docket. No. 1, Anza's Complaint ("Complaint"). Even though Mushkin, Inc. (prior to April 2012) purchased and re-sold off-the-shelf products, the Original Complaint mistakenly alleged that "Mushkin, Inc., d/b/a Mushkin Enhanced MFG" infringed the '927 Patent by its business of designing, manufacturing, assembling, or importing computer memory components that utilize certain integrated circuit ("IC") chips (the "Accused Products"). Docket No.1: Complaint, ¶ 8.

Not only had Mushkin divested itself of its memory business back in April, 2012, but even before that time, Mushkin, Inc. never conducted "flip chip" assembly of products as alleged by Anza. The '927 Flip-Chip Patent claims <u>exclusively</u> a flip chip capillary-based bonding system and tools. *Id.* at 1:36-41; 1:61–65. Flip chip microelectronic assembly (or flip chip bonding) includes the step of "flipping" individual chips from a face-up position to a face-down (flipped) position on a substrate, circuit board, or carrier. Docket No. 1: Complaint, Ex. A, '927 Patent at 1:61–65. The Applicant in the '927 Patent first introduced "flip chip" capillary subject matter into their chain of applications by a Provisional Application Serial No. 60/503,267, filed on September 15, 2003. *Exhibit 2, Provisional No. 60/503,267, p. 1-3 (p. 3 first mention of "flip chip").* Prior to 2012, Defendant Mushkin never did any of these "flip chip" activities.

"Mushkin Enhanced MFG" is a trade name that belongs to Avant Technology, Inc. ("Avant"), and Mushkin did not establish that dba or operate any business under that dba. Anza clearly confused Mushkin with Avant in the Original Complaint when it improperly named Mushkin, Inc. as a Defendant. Over the next year, Mushkin repeatedly informed Anza that it had sued the wrong entity, and Mushkin informed Anza that prior to April 2012 it never utilized the type of capillary-based tools and tips covered by the '927 Flip Chip Patent. *Exhibit 3, Email to Mr. Springer, Sept. 14, 2017; Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment).*

Nonetheless, Anza refused to dismiss the action against Mushkin, and Mushkin, Inc. has been forced to defend itself in this baseless action. Mushkin filed a Motion to Dismiss the Original Complaint because: (1) Anza had served and sued the wrong defendant, which means service on Mushkin was defective under Rules 12(b)(4) and 12(b)(5), (2) the Eastern District of

California was an improper venue for a claim of patent infringement against Mushkin under 28 U.S.C. § 1400(b), and (3) the Complaint was subject to dismissal under Rule 12(b)(6). Docket No. 13, Mushkin Motion to Dismiss, pp. 7–19.

### C.    Anza's First Amended Complaint Also Alleged Claims of Infringement Against Mushkin Based Solely on the '927 Flip Chip Patent

Rather than dismissing the action or responding to the pending Motion to Dismiss, Anza filed a First Amended Complaint ("FAC") in the Eastern District of California on September 6, 2017. Docket No. 20: FAC. The FAC added Avant as a named defendant. Despite the fact that Mushkin informed Anza that it had no involvement whatsoever in Avant's business (and provided Anza with a copy of the 2012 Asset Sale agreement), Anza continued to assert patent infringement claims against Mushkin under the '927 Flip Chip Patent. Docket No. 20: FAC, ¶¶ 34–37. Anza mistakenly claimed that Mushkin used to own Avant's Pflugerville, Texas facility, and that the two entities currently share use of the Pflugerville facility, which was untrue. Docket No. 20: FAC, ¶¶ 14, 15.

All of these allegations were unsupported, mistaken and erroneous, and Anza never had any basis to lodge these allegations when it filed the First Amended Complaint. Mushkin continued to inform Anza that had sued the wrong entity and that Mushkin never utilized the capillary-based bonding tools covered by the '927 Flip Chip Patent – which meant there was no way for Anza to truthfully allege that Mushkin had infringed the '927 Patent. *Exhibit 3, Email to Mr. Springer, Sept. 14, 2017; Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment).* For instance, on September 14, 2017, counsel of Mushkin sent counsel for Anza an email stating:

> You are hereby notified that Mushkin and Avant's products fabricated during the statute of limitations were bonded to PCB's using a "vintage" machine that, from our current research, has been operating without a capillary bonding tool since the time period of 2003-05 (which is being confirmed). … The FAC does not, and cannot truthfully, allege that either entity uses such capillary based flip chip bonding tools and tips.

*See Exhibit 3*: Sept. 14, 2017 Email. Despite this knowledge, Anza continued to refuse to dismiss its First Amended Complaint.

After the First Amended Complaint was filed, Mushkin was forced again to defend itself in this baseless action. Mushkin filed a Motion to Dismiss on August 16, 2017 (Docket No. 29, Mushkin Motion to Dismiss FAC), which was granted on venue grounds (changed venue to

District of Colorado); and later, this Court dismissed the First Amended Complaint against Mushkin on substantive grounds – namely, the admitted non-viability of the Anza claims of patent infringement. See Docket No. 40: Order, p. 6, fn. 2, Order Granting Motion to Change Venue; *Exhibit 7,* DE No. 72, Minute Order, May 17, 2018, Order Granting Motion to Dismiss (Anza's counsel admitted claims were not viable).

Prior to granting the Motion to Dismiss on substantive grounds, Mushkin had put Anza on notice that its current claims of patent infringement were baseless, and that possible new claims of patent infringement would be barred by the statute of limitations. *Exhibit 3, Email to Mr. Springer, Sept. 14, 2017; Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment).* The baseless patent infringement claims in the Original and First Amended Complaint were filed and maintained by Anza for over a year even though Anza knew that it had sued the wrong party, Mushkin had divested itself of its memory business in April 2012; and, Anza had been notified that there was no infringing activities conducted by Mushkin relating to any "flip chip" capillary bonding systems covered in the claims in the '927 Patent. *Id.*

> **D.    Anza Files a Second Amended Complaint, Dropping its Allegations of Infringement of the '927 Flip Chip Patent After Over a Year, and Instead Alleging Claims of Infringement Based on the '479 and '864 Patents**

On June 8, 2018, Anza filed a Second Amended Complaint ("SAC"), which completely dropped all its non-viable claims of "flip chip" patent infringement under the '927 Flip Chip Patent. For the first time, the SAC asserted claims of infringement relating to two new patents (U.S. Patent No. 6,354,479 or '479 Patent, and U.S. Patent No. 6,651,864 or '864 Patent), each of which covers different subject matter compared to the '927 Patent "flip chip" capillary bonding system. Docket no. 75: SAC, ¶¶ 46, 55.

Anza's latest allegations in the SAC include claims that infringement arises under Section 271(g) from practicing a "method of use" (fails as a matter of law), and that Mushkin directly infringed the wire bonding tools and methods in these newly-asserted '437 and '864 Patents when Mushkin used wire bonding tips to wire bond IC chips. Anza attached the Declaration of George Stathakis to the SAC, so Anza knows that Mushkin bought off-the-shelf products that were fully encapsulated in plastic and pre-bonded to circuit boards, and Anza knows that Mushkin never used wire bonding tips and never wire bonding IC chips. *Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment).* Remarkably, Anza is asserting claims of direct infringement against Mushkin, Inc. anyway.

The patent specification in the '927 Flip Chip Patent is entirely different from the specifications in the two newly-asserted patents. See Docket No. 20: FAC, Ex. A, '927 Flips Chip Patent, Sheets 1–3 (Figures 1–3); *Exhibit 1, Cover Pgs. (titles).*  Namely, the claimed subject matter in the '479 and '864 Patents does not mention, cover or protect any "flip chip" technology.  Docket No. 75-3: SAC, Ex. C, '479 Patent at 1:15-17; Docket No. 75-4: SAC, Ex. D, '864 Patent at 1:23-25.  It is <u>undisputed</u> that the "flip chip" technology claimed in the '927 Patent was only evidenced to have been first introduced into a patent specification by the Applicant's provisional application filing on September 15, 2003 (*Exhibit 2, Provisional No. 60/503,267)* – long after the issuance and filing of the '479 and '864 Patents.

Specifically, the '479 Patent was issued on March 12, 2002 – more than a year and a half before "flip chip" subject matter was first claimed to have been invented by the inventor in the '927 Patent (first filing, Sept. 15, 2003); and; the '864 Patent was already on file (filed December 31, 2001) more than two years before "flip chip" subject matter was first claimed to have been invented by the inventor in the '927 Patent (first filing, Sept. 15, 2003).  *Exhibit 1, Cover Pgs. (each patent); Exhibit 2, Provisional No. 60/503,267.*  Any attempt to argue that the '479 Patent or the '864 Patent (non-"flip chip") somehow provides support for the '927 Flip Chip Patent should fail as a matter of law.

Moreover, Anza identifies only "methods of use" claims in the '479 and '864 Patents were infringed by Mushkin under Section 271(g) of the Patent Act.  Section 271(g), however, does not support asserting infringement of "methods of use," as shown in applicable precedent and the legislative history of the 271(g) amendment.  Anza's latest allegations in the SAC also include claims that Mushkin directly infringed the wire bonding tools and methods in the '437 Patent and the '864 Patent when Mushkin wire bonded pads on IC chips.  Anza's claims are entirely unsupported because Anza knows Mushkin bought off-the-shelf products that were fully encapsulated in plastic and pre-bonded to circuit boards -- Anza knows that Mushkin never conducted any methods of using wire bonding tips and never wire bonding IC chips.  Despite this fact, Anza is asserting direct infringement of these claims anyway.

These earlier '479 and '864 Patents are unrelated to, and cannot support, the claimed subject matter in the '927 Patent because neither of these two earlier patents make any mention of the later invented "flip chip" capillary bonding tools or systems (first mentioned on Sept. 15, 2003, years after the issue and filing dates of the '479 and '864 Patents).  Thus, the SAC

amounts to a completely new case. Because Anza has continued to pursue utterly baseless claims of patent infringement against Mushkin, there has been a tremendous expenditure of resources, time, and money debunking these meritless claims.

> **E.    The Honorable Judge Koh of the Northern District of California Concluded that Anza's New Patent Infringement Claims Constitute a "Whole New Case" When Anza Pulled This Same Maneuver in a Separate Case**

Anza has pulled this same "maneuver" in a separate litigation asserted against Defendants Toshiba America Electronic Components, Inc. and Toshiba Memory America, Inc. (collectively "Toshiba Defendants"), pending in the Northern District of California. See *Anza Technology, Inc. v. Toshiba America Electronic Components, Inc. et al.*, No. 5:17-cv-07289 (N.D. Cal. filed Dec. 22, 2017) ("maneuver", Judge Koh). The Court allowed the filing, but it appears that Toshiba has a motion to dismiss pending in that matter with respect to this amended filing.

After Toshiba submitted a Rule 11 letter against Anza for its failure to conduct *any* pre-filing investigation, Anza dropped its claims of infringement of U.S. Patent No. 7,389,905 (the "'905 Patent") and requested permission to file an amended complaint alleging infringement of the '479 and '864 patents (just as it did in the instant case). Judge Koh was notably skeptical of Anza's attempt to avoid dismissal and the consequences of the Toshiba Defendants' Rule 11 motion, by filing of an entirely new patent case.[1] Reviewing the same basic situation, the Honorable Judge Koh noted that Anza was bringing a "whole new case" against the Toshiba Defendants by this "maneuver":

> **THE COURT:** WHY DON'T YOU DO THAT? WHY SHOULD YOU GET TO JUST TOTALLY BRING A WHOLE NEW CASE UNDER THIS SAME CASE FILING?
> **MR. SPRINGER:** I WOULDN'T CHARACTERIZE IT AS BRINGING A WHOLE NEW CASE, YOUR HONOR.
> **THE COURT:** *YES, IT IS. YOU'RE DROPPING THE ONE PATENT YOU ASSERTED AND YOU'RE BRINGING IN TWO NEW ONES.*
> **MR. SPRINGER:** THAT'S CORRECT, AND . . .

---

[1]  See Exhibit 6: Transcript of April 18, 2018 *Anza v. Toshiba* Hearing, p. 14:3-6 ("THE COURT: I REALLY DON'T LIKE THE WAY YOU DID THIS AND I HAVEN'T SEEN THIS BEFORE WHERE A PLAINTIFF WOULD JUST BASICALLY DUMP THE PATENTS THEY'VE ASSERTED AND WANT TO BASICALLY BRING A NEW CASE"); p. 14:17-20 ("THE COURT: THIS IS VERY UNUSUAL TO BASICALLY ABANDON YOUR PREVIOUS CASE AND WANT TO GET DAMAGES BASED ON TWO PATENTS THAT WERE NOT EVEN ASSERTED THAT YOU'RE SAYING DON'T HAVE THE SAME SPEC. WHY SHOULD YOU GET THAT?); p. 19:6-8 ("THE COURT: YEAH, NO. I -- THIS IS A VERY UNUSUAL MANEUVER. I'VE NEVER SEEN THIS BEFORE IN A PATENT CASE, THIS KIND OF BAIT AND SWITCH. I WOULD NEVER ALLOW IT A SECOND TIME.")

*Exhibit 6*: Transcript of April 18, 2018 *Anza v. Toshiba* Hearing, p. 14:3-6 (emphasis added).

The Toshiba Defendants have also filed a Motion for Attorneys' Fees against Anza in that case under 35 U.S.C. § 285, citing (among other reasons), Anza's clear pattern of patent litigation misconduct. *See Exhibit 8*: Toshiba Defendants' Fees Motion filed May 2, 2018, pp. 21–22. The Toshiba Defendants stated in their Fee Motion that "Anza's litigation conduct in this and related cases reflect an improper sue-and-settle strategy, with no intention of testing the merits of its claims." *Id*. at p. 22. This is demonstrated conspicuously by the fact that Anza has filed over 11 patent infringement cases in various jurisdiction since March 2016, asserting infringement of its flip-chip bonding tool patents (almost all of which have been dismissed). *Id*. "Anza's pattern of serial litigation strongly suggests that Anza is pursuing a sue-and-settle strategy, based on an inadequate (or non-existent) pre-filing investigations, hoping that companies will pay cost-of-litigation settlements rather than defend themselves." *Id*.

## II.    ARGUMENT

### A.    This Court Should Dismiss the SAC under Rule 12(b)(6) Because Anza Has Failed to State a Claim for Which Relief Can be Granted, as "Method of Use" Claims Cannot be Asserted Under Section 271(g) as a Matter of Law.

In the SAC, Anza *only* asserted claims of infringement relating to "methods of use" claims in the '479 and '864 Patents under the Process Patent Act of 35 U.S.C. § 271(g). Docket no. 75: SAC, ¶¶ 46-47, 52-53 (Claim 39 under only §271(g)), 55-56 (Claim 28 recites "specifically the use" of a bonding tip), 62 (Claim 28 under only § 271(g)). No other claim or statutory basis is asserted by Anza to support a claim of infringement, and no claims are asserted that recite a method of producing a physical product.

"Method of use" claims asserted under Section 271(g) fail as a matter of law. *Synaptic Pharm. Corp. v. MDS Panlabs, Inc.,* 265 F.Supp. 2d 452 (D. N.J. 2002) (distinguishing methods of testing vs. process that produce an end-result physical product, which is covered by 271(g)).[2]

---

[2]  134 CONG.REC. S4843-01 (daily ed. April 27, 1988) (statement of Sen. DeConcini) ("The U.S. patent laws recognize three basic types of inventions for which patents may be obtained: products, methods of use, and methods of manufacture. Patents on the last are also known as process patents. Process patents have become increasingly important to a number of industries, especially in the areas of industrial and pharmaceutical chemicals, optical fibers, and above all in the field of biotechnology and bioengineering research."); *Synaptic, id. at 460 (*"When discussing § 271(g) in particular, however, the Senate Report appears to create a distinction between different categories of process patents that excludes method [of use] patents from the scope of § 271(g). The Report states that "U.S. patent laws recognize three basic types of inventions for

Like the *Synaptic* court, other courts have found that §271(g) of the Process Patent Act does not apply to methods of use or other types of method steps that do <u>not</u> produce a new physical product as an end-result of the process patent steps.[3]  As such, 271(g) statute concerns products that are physical goods produced by the claimed manufacturing process; and, this statute does not cover other types of methods (e.g. methods of use) that do not produce a patented end-product.

The claims identified in the SAC <u>only</u> specify a method of using a bonding tip, not a method of producing a physical end-result patented product.  *See* SAC, ¶¶ 46-47, 52-53 (Claim 39 under only § 271(g)), 55-56 (Claim 28 recites "specifically the use" of a bonding tip), 62 (Claim 28 under only § 271(g)).  According to controlling case law, the manufacture of an end-result physical "product" is essential to establishing infringement under section 271(g), yet none of Anza's asserted claims under Section 271(g) are processes for producing an end-result physical product.  Because Anza's asserted method of use claims do not produce a physical end product, the "Process Patent Act" codified in Section 271(g) does not apply to those claims.  Under Rule 12(b)(6), Anza's

---

which patents may be obtained: products, methods of use, and methods of manufacture. Patents on the last also known as process patents, that is patents on process inventions." S.R. at 41 The Report then goes on to discuss § 271(g) as an important step in the protection of process patents. By defining methods of manufacture as "process patents" as distinct from "methods of use," Congress appears to exclude methods of use from the purview of the statute. This definition is by no means conclusive. It does, however, provide further evidence for the conclusion that Congress may not have intended § 271(g) to apply to the results of diagnostic assays. Absent a clearer, affirmative expression of Congressional intent to extend protection to assay patents, this Court is reluctant to do so." (citing 134 CONG.REC. S4843-01 (daily ed. April 27, 1988) (statement of Sen. DeConcini)).

[3] *Yangaroo v. Destiny Media Tech,* 720 F.Supp.2d 1034 (E.D. Wisc. 2010) ("What is claimed in the '712 patent is 'a method of distributing content' that already existed" and "the '712 patent claims no method or process <u>for the creation</u> of the content that Yangaroo argues constitutes the product that is essential to establish infringement under section 271(g).  It therefore follows that Yangaroo's infringement claim must fail.") (Plaintiff Yangaroo subsequently settled its case against Destiny by Yangaroo's payment of $600,000 so that all claims for attorney fees would be withdrawn); *see also, Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1371-72 (Fed. Cir. 2003) (the Federal Circuit held that the statutory prohibition on the importation or sale of a product "made" by a patented process applies only to "physical products" that are "manufactured," and does not extend to "information" or other non-physical products used in the claims.  In *Bayer* the Federal Circuit reasoned that because section 271(g) appeared directed toward "tangible objects and not intangibles such as information," the production of information did not fall with the scope of the processes of "manufacture" discussed in the statute. *Id.* at 1372); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) (*NTP* alleged that RIM's BlackBerry™ system infringed *NTP*'s patents for a method of enabling mobile users to receive e-mail over a wireless network, the *NTP* court held that section 271(g) did not apply because the claims did not entail or result in the manufacturing of a physical product . . . ." 418 F.3d at 1323).

claims for patent infringement fail as a matter of law, and the SAC should be dismissed for failure to adequately state a claim for relief.

Assuming a responsive argument and in light of the above dismissal request, the only way Mushkin could possibly infringe the cited "method of use" claims is for Mushkin to actually practice the method of using the bonding tip itself.  Under that understanding, Anza's latest allegations in the SAC also fail because Anza knows that Mushkin bought off-the-shelf products that were fully encapsulated in plastic and pre-bonded to circuit boards, which means Anza knows that Mushkin never used wire bonding tips and never wire bonding IC chips.  *Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment).*  All of Anza's infringement claims in the SAC should be dismissed under Rule 12(b)(6) with prejudice.

### B.     The Second Amended Complaint Does Not Relate-Back to the Date the Original Complaint Was Filed

Assuming that Anza argues that their patent claims survive under Section 271(g) or another statutory provision, Anza will need still need to establish that the SAC should "relate-back" to the date the original Complaint was filed on March 21, 2017 pursuant to Rule 15(c), or Anza will be foreclosed from any entitlement to damages prior to June 8, 2012 (six year window for past patent damages under 35 U.S.C. §286).  As explained below, Anza's SAC does not relate-back to the original Complaint because the newly asserted patents-in-suit are not "part and parcel" of the original '927 Flip Chip Patent.

#### 1.     An Amendment Adding a New Patent Will Not Relate-Back to the Original Complaint Unless the New Patent is "Part and Parcel" of the Originally Asserted Patent Claim

In cases involving allegations of patent infringement, the Federal Circuit has held that an amendment may "relate back" under Rule 15(c) when the earlier complaint gave adequate notice of the newly-asserted claim. *Korody-Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572 (Fed. Cir. 1987).  Under this rationale, the *Illinois Tool Works* district court held that the amendment of a pleading to allege infringement of a new patent *does not* relate back to date of original pleading for purposes of statute of limitations. *Illinois Tool Works v. Foster Grant Co.*, Inc., 395 F. Supp. 234, 250-51 (N.D. Ill. 1974), *aff'd* 547 F.2d 1300 (7th Cir. 1976), *cert. denied*, 431 U.S. 929 (1977).

In *Illinois Tool Works*, a patent holder brought suit for one patent and later amended its pleading to add another patent. The defendant asserted a statute of limitations defense against claims of infringement of the newly-added patent under six-year damages limitation of Section 286. *Id.* The plaintiff attempted to argue that new patent claim was not time-barred because the amendment related back to the filing of the original complaint under Rule 15(c), but the district court rejected this argument holding the amendment of a pleading to allege infringement of a new patent does not relate back to date of original pleading for purposes of statute of limitations. *Id.* at pp. 250–251; *see also, Judge Koh's statement above in the Anza v. Toshiba case, Exhibit 6.*

Rule 15(c) does not apply when a new patent is added, because "[a]n alleged infringement of one patent is not the 'same conduct, transaction or occurrence' as the alleged infringement of another patent." *Id.* The *Illinois Tools* district court further held that because damages are not collectible for infringement of other patents more than 6 years before amendment of pleadings, the plaintiff's claims for infringement based on the new patents were time-barred. *Id.* The same holding is believed to be appropriate in the present case.

Numerous other district courts have held that a claim for infringement of one patent is not the same "conduct or occurrence" as a claim for infringement of another patent unless it could be shown that the second patent is "part and parcel" of the controversy surrounding the earlier patent.[4] For instance, *Mann Design Ltd. v. Bounce, Inc.*, 138 F. Supp. 2d 1174, 1178 (D. Minn. 2001, emphasis added) involved a declaratory judgment plaintiff that sought to amend a declaratory relief claim to include two new patents, arguing that these new patents (including continuations of the previously asserted patent) should relate-back to the date of the original filing (under Rule 15(c)) for the purpose of the "first to file" rule. The district court considered

---

[4] *Mann Design Ltd.*, *supra*, 138 F. Supp. 2d 1174; *Collezione Europa U.S.A., Inc. v. Amini Innovation Corp.*, Civil Action No. 06-4929 (GEB) (ES), 2009 U.S. Dist. LEXIS 76411, at *8 (D.N.J. Aug. 26, 2009); *Cardiovascular Imaging Sys. v. Bos. Sci. Corp.*, NO. C 93-20902 (RMW), 1994 U.S. Dist. LEXIS 6722 (N.D. Cal. Apr. 26, 1994) (amended patent claim did not "relate back" to the original patent complaint even though both the complaint and amendment involved patents on the same technology); *Mallinckrodt Medical Inc. v. Nycomed Imaging AS*, 49 U.S.P.Q. 2d 1474 (E.D. Mo. 1998) (declining to relate amended complaint back for first-to-file purposes where the only defendant in first complaint was dismissed entirely for lack of personal jurisdiction and where the "undisputed facts suggest that Mallinckrodt did not make a mistake within the meaning of Rule 15(c) but proceeded as it did as a strategic act"); *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-07-06222 RMW, 2008 U.S. Dist. LEXIS 109786, at *9 (N.D. Cal. May 5, 2008) (holding the patents that are the subject of Bel Fuse's proposed declaratory judgment claims are not "part or parcel" of the controversy that is the subject of the originally-filed New Jersey complaint).

whether these later-added patents were "part and parcel" of the patent identified in the Original Complaint, but concluded that they were not "part and parcel" of the claims in the Original Complaint -- even though one of the later-added patents was a "continuation" of the patent identified in the Original Complaint. *Id.* at pp. 1178–80. The same holding is believed to be appropriate in the present case.

In *Cardiovascular Imaging Sys. v. Bos. Sci. Corp.*, NO. C 93-20902 (RMW), 1994 U.S. Dist. LEXIS 6722 (N.D. Cal. Apr. 26, 1994), the court found that an amended patent claim did not "relate back" to the original patent complaint even though both the complaint and amendment involved patents on the same technology. Despite the plaintiff's claim that there was "considerable overlap in the technology and potential witnesses," *Id.* at *5, the court determined that there was no relation back because "the [new] patent raise[d] completely different infringement issues and completely different prior art issues." *Id.* at *7. The same holding is believed to be appropriate in the present case.

The "part and parcel" and "adequate notice" test has also been adopted in cases involving analogous copyright infringement claims. For instance, in *Collezione Europa U.S.A., Inc.*, *supra*, 2009 U.S. Dist. LEXIS 76411, at *11, the district court held that the newly asserted copyrights were not "part and parcel" of the originally pled copyright. *Id.* at *8–11. The district court considered the implications of a contrary holding in permitting litigants to evade the statute of limitations:

> [I]f the Court were to allow amendments that are out of time to relate back that involve entirely different copyrights for entirely different products, a party could readily evade a statute of limitations by bootstrapping stale copyright claims onto ones that are fresh, thus allowing the exception to swallow the rule. Such a holding would render the statute of limitations a nullity in copyright cases.

*Id.* at *11. This analysis appears to mirror the concerns repeatedly expressed by Judge Koh in the *Anza v. Toshiba* litigation – it be inappropriate to allow Anza to bootstrap stale claims for infringement to the case. *Exhibit 6.*

### 2.    The New Patents are Not "Part and Parcel of the '927 Patent

In this case, the claims of infringement regarding the New Patents are not "part and parcel" of the original claims of infringement of the '927 Flip Chip Patent, and Mushkin was not provided with "adequate notice" from the Original or First Amended Complaint that new patent

claims under the '479 and '864 Patents would be asserted by Anza. Therefore, the SAC should not, and does not, relate back to Anza's original Complaint under Rule 15(c).

The claims in the '927 Patent are <u>solely</u> directed to "flip chip" capillary bonding systems, and the Applicant first introduced "flip chip" capillary subject matter into their chain of applications by a Provisional Application Serial No. 60/503,267, filed on September 15, 2003. *Exhibit 2, Provisional No. 60/503,267 (first mention of "flip chip" by Applicant).* In its SAC, Anza now asserts claims of infringement of two entirely new patents (U.S. Patent No. 6,354,479 or '479 Patent, and U.S. Patent No. 6,651,864 or '864 Patent), each of which cover completely different subject matter that is entirely unrelated to "flip chip" capillary bonding systems. *Exh. 1, Patent Front Pgs. and exhibits to SAC.* Nothing in the '479 Patent or '864 Patent contemplated any coverage over "flip chip" technology.

Anza's latest allegations in the SAC include claims under Section 271(g) that fail as a matter of law, as well as claims that Mushkin directly infringed the wire bonding tools and methods in the '437 Patent and the '864 Patent when Mushkin allegedly used wire bonding tips to wire bond the bonding pads on IC chips. Anza knows that Mushkin bought off-the-shelf products that were fully encapsulated in plastic and pre-bonded to circuit boards, so Anza knows that Mushkin never used wire bonding tips and never wire bonding IC chips, but it is asserting direct infringement of these claims anyway. *Exhibit 4, Email and Ltr. to Mr. Springer, April 6, 2017 (attachment), Declaration of Mr. Stathakis.* None of these claims, or accused activities, was addressed, contemplated, discussed, or identified by Anza in the Original or First Amended Complaint.

Overall, Mushkin could not have been "put on notice" that Anza would switch its claims <u>from</u> "flip chip" infringement allegations <u>to</u> significantly different "wire bonding" allegations by virtue of the Original or First Amended Complaints. The new wire bonding allegations are not "part and parcel" of the prior "flip chip" allegations, and Mushkin was not "put on notice" about these claims by virtue of Anza's first complaints.

The "flip chip" actions and activities in Anza's first filings would not be addressed, covered, claimed or protected by the wire bonding claimed subject matter covered in the '479 and '864 Patents. Flip chip technology was not part of (or even contemplated to be part of) the '479 Patent or the '864 Patent when those applications were filed or issued. The '479 Patent was issued on March 12, 2002 – more than a year and a half before "flip chip" subject matter was

first claimed to have been invented by the inventor in the '927 Patent (first filing, Sept. 15, 2003), and the '864 Patent was already on file (filed December 31, 2001) more than two years before "flip chip" subject matter was first claimed to have been invented by the inventor in the '927 Patent (first filing, Sept. 15, 2003). *See Exhibit 2, Provisional Application.* These earlier '479 and '864 Patents are unrelated to, do not claim, and cannot support, the "flip chip" claimed subject matter in the '927 Patent because neither of these two earlier patents make any mention of the later invented "flip chip" capillary bonding tools or systems, which was first mentioned by the Applicant on Sept. 15, 2003. *Id.*

Because the claimed infringing activities are significantly different in the SAC from any previously-asserted infringing activities, the newly asserted claims are not "part and parcel" of the flip chip infringement claims in the Original and First Amended Complaint. See *Cardiovascular Imaging Sys.*, *supra*, No. C 93-20902 (RMW), 1994 U.S. Dist. LEXIS 6722. Anza knows that the Original and First Amended Complaints did not provide notice that claims would be made under the '479 Patent and the '864 Patent because Anza sent Mushkin's counsel a separate letter long after their Original and First Amended Complaint filings notifying Mushkin that additional claims may be made under these two newly-asserted patents – a letter that would have been unnecessary if the assertion of patent infringement under the '479 and '864 Patent were already "part and parcel" of the Original and First Amended Complaint. *Exhibit 5, Mr. Springer Ltr., p. 1.* Counsel would not need to set forth these new allegations of infringement in a letter <u>if</u>, in fact, Mushkin was already "put on adequate notice" of these allegations in the Original or First Amended Complaint filings.

As Judge Koh correctly remarked, Anza's conduct in filing these types of amended complaints amounts to a "completely new case." For the reasons set forth herein, the SAC amounts to a "whole new case" against Mushkin that does not "relate-back" to the date the original complaint was filed under Fed. R. Civ. R. 15(c). If this Court were to allow Anza to relate-back time-barred patent infringement claims to its original complaint, it would be permitting Anza to evade the statute of limitations by "bootstrapping stale [patent infringement] claims onto ones that are fresh, thus allowing the exception to swallow the rule. Such a holding would render the statute of limitations a nullity in [patent infringement] cases." *See Collezione Europa U.S.A., Inc.*, *supra*, 2009 U.S. Dist. LEXIS 76411, at *11.

Anza's new infringement claims are not "part and parcel" of the '927 Flip Chip Patent, and should not relate-back to the date the original Complaint was filed. The filing date that should be accorded the new claims of patent infringement in the SAC should be June 8, 2018, without any relation back to an earlier filing date.

### C.    This Court Should Dismiss the SAC under Rule 12(b)(6) Because Anza's Damages are Time-Barred, and Thus Anza Has Failed to State a Claim for Which Relief Can be Granted

Because the filing date that should be accorded the new claims of patent infringement in the SAC should be June 8, 2018, Anza's stale, time-barred patent claims should be dismissed under Rule 12(b)(6) due to the six year statute of limitations window specified in Section 286 of the Patent Act. Where the dates in a complaint show that an action is barred by the statute of limitations, a defendant may raise the affirmative defense of the statute of limitations in a pre-answer motion to dismiss under Rule 12(b)(6). *Rohner v. Union P. R. Co.*, 225 F.2d 272, 273-74 (10th Cir. 1955); see also *In re Mullaney*, 179 B.R. 942, 945 (D. Colo. 1995).

Patent infringement damages are limited by 35 U.S.C. § 286 ("Section 286"), which provides "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." As such, an essential element of a complaint for patent infringement is the assertion of a patent-in-suit that was enforceable at some point during the six-years prior to the filing of the complaint. Without any such patent-in-suit, there is no set of circumstances under which a defendant can be liable for patent infringement, or a patentee can be entitled to any relief.

Where the only infringing activity alleged in a complaint occurred more than 6 years prior to its filing, then a complaint is properly dismissed under Rule 12(b)(6) as having failed to state a claim upon which relief can be granted. See *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345 (Fed. Cir. 1985) (affirming dismissal of a complaint as to a defendant whose only accused infringement occurred more than 6 years before complaint was filed); *KEARNS v. GMC, Civil Action No. 93-966-A*, 1996 U.S. Dist. LEXIS 21981, at *4-5 (E.D. Va. Dec. 31, 1996) (dismissing patent infringement claim under Rule 12(b)(6) where the six year limit on damages would prohibit any recovery based on allegations in the complaint).

In the present case, Anza filed its SAC on June 8, 2018 eliminating allegations that the '927 Flip Chip Patent was infringed and instead alleged that Mushkin infringed on the '479

Patent and '864 Patent.  The SAC acknowledges that, on April 1, 2012, Mushkin sold all rights to do business under the Mushkin brand name to Avant Technology, Inc. Dock. 75: SAC, ¶¶ 8–9; *see Exhibit 9, Asset Sale Agreement.*  The SAC concedes that, since that time, Mushkin has not conducted any assembly and aggregation of performance computer products, including hard drives and memory cards. Dock. 75: SAC, ¶ 8.

Understanding the significance of the Asset Sale transaction on April 1, 2012, the SAC explicitly attempts to extend its allegations of infringement as to the '479 Patent and '864 Patent beyond the allowable six year window -- to activity occurring *prior* to April 1, 2012.  With regard to the '479 Patent, the SAC states: "Defendant Mushkin infringed—prior to April 1, 2012—claim 39 of the '479 Patent under 35 U.S.C. § 271(g)." Dock. 75: SAC, ¶ 53. With regard to the '479 Patent, the SAC states: "Defendant Mushkin infringed—prior to April 1, 2012—claim 28 of the '864 Patent under 35 U.S.C. § 271(g)." Dock. 75: SAC, ¶ 62.  This claim for damages circumvents the express limitations set by Section 286 of the Patent Act.

Under Section 286, Anza is limited to damages from infringement occurring six years occurring on or after June 8, 2012 (six years prior to June 8, 2018).  The SAC makes no claims of patent infringement by Mushkin after April 1, 2012. Dock. 75: SAC, ¶¶ 53, 62.  Thus, taking the allegations in the SAC as true, the only infringing activity alleged in the SAC occurred more than 6 years prior to the filing date of the SAC.  Mushkin cannot be liable for infringement of the newly-asserted patent because any recovery for infringement prior to June 8, 2012 is time-barred.  Consequently, Anza's SAC should be dismissed in its entirety under Rule 12(b)(6) because there is no set of circumstances under which Mushkin can be liable for patent infringement, or under which Mushkin would be entitled to any relief. *Standard Oil Co.*, *supra*, 754 F.2d 345.

III.    **THE COURT SHOULD DISMISS THE SAC FOR LACK OF SUBJECT MATTER UNDER RULE 12(B)(1) BECAUSE ANZA AS FAILED TO RAISE A JUSTICIABLE CASE OR CONTROVERSY**

Anza's SAC should also be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because there is no justiciable case or controversy alleged in the SAC.  No case or controversy exists because Anza is not entitled to any redress for the alleged injury under 35 U.S.C. §§ 281, 283, 284, and 286.  "The case or controversy clause in Article III of the Constitution requires injury in fact, connection between the challenged conduct and the injury,

and redressability of the injury by the requested remedy." *Allergan, Inc. v. Alcon Labs.*, 324 F.3d 1322, 1331 (Fed. Cir. 2003).

"The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).  In the patent context, "[s]ince the patent statutes give rise to the right to sue others for patent infringement, they also define the nature and source of the infringement claim and determine the party that is entitled to judicial relief." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).  Specifically, the right to bring a patent infringement suit under Title 35 is the right "to obtain damages for the injury to his exclusive right by an infringer" or to obtain injunctive relief. *Id*. at p. 1342; 35 U.S.C. §§ 281, 283, 284, 286.  Where the patent plaintiff is not entitled to statutory relief under the Patent Act, the patent plaintiff is not "injured" by another party.  *Id* at. p. 1341.

Here, any damages Anza would otherwise have the right to recover against Mushkin for patent infringement under 35 U.S.C. § 284, are time-barred under Section 286.  Further, there is no allegation by Anza that there is any ongoing infringement by Mushkin that would otherwise entitle Anza to injunctive relief under 35 U.S.C. § 283.  As such, Anza is not entitled to statutory relief from Mushkin under Title 35, and there is no case or controversy between the parties. Anza's SAC is subject to dismissal under Rule 12(6)(1) for lack of subject matter jurisdiction.

## IV.    ALTERNATIVELY, ANZA'S COMPLAINT IS SUBJECT TO DISMISSAL UNDER RULE 56

Alternatively, if the court finds Anza's allegations of patent infringement sufficient to state a claim under some hypothetical possibility of infringement, Mushkin is still entitled to summary judgment on this claim under the standard set forth in Rule 56.  "[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  To withstand a motion for summary judgment, the non-moving party must present sufficient evidence of genuine issues of material fact for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248.

The record already contains declarations of Mushkin's President, George Stathakis (attached to the SAC), which establish that Mushkin never infringed on the newly asserted wire bonding patents, and that no infringement of these newly asserted patents occurred within the six years prior to the filing of the relevant pleading. Dock. 75-5, Ex. E to SAC, Declaration of George Stathakis dated October 2, 2017, ¶ 4; Dock. 75-6, Ex. F to SAC, Declaration of George Stathakis dated April 4, 2018, ¶¶ 5–6. In light of these facts, the burden shifts to Anza in its opposition to submit evidence establishing a genuine issue of material fact that there was infringing activity in six-years prior to the filing of the complaint.

Anza cannot meet this burden. Anza will not be able to rely on its conclusory allegation that it "is not aware of any commercially viable non-infringing processes that might have resulted in the manufacture of the Accused Products that are imported into the United States ..." Dock. 75, ¶¶ 52–53, 60–62. Instead Anza must submit admissible evidence showing how Mushkin "used" bonding tips according to the identified "method of use" claims set forth in the SAC. To the extent that Anza fails to produce any admissible evidence that Mushkin actually infringed on the New Patents within the six-year period prior to the filing of the complaint, Mushkin is entitled to summary judgment under Rule 56. *Genentech, Inc. v. Insmed Inc.*, 436 F. Supp. 2d 1080, 1094 (N.D. Cal. 2006) (dismissing defendant from patent infringement lawsuit on summary judgment because the plaintiffs failed to provide any evidence that the defendant infringed the patent-in-suit, within the six years prior to the filing of the lawsuit).

## V.    **CONCLUSION**

For the reasons statement herein, Mushkin respectfully requests that the Court grant its Motion to Dismiss the SAC pursuant to Rule 12(b)(6), Rule 12(b)(1), and/or Rule 56. Anza brought its original claims in bad faith. Anza continued to pursue Mushkin in the First Amended Complaint in bad faith. And, consistent with that conduct, Anza's latest infringement claims in the SAC, which relate to completely different patents, are brought in bad faith.

Mushkin is hoping to avoid dismissal so it can extract a nuisance value settlement from Mushkin. Based on Anza's insufficient allegations of patent infringement, Anza's SAC should be dismissed. Anza's Section 271(g) claims are fatally flawed, and Anza is not entitled to any relief under the Patent Act even if their claims were viable (which they are not). Anza's SAC is facially defective under Rule 12(b)(6) and Rule 12(b)(1). There is simply no way for Anza to

prove infringement on such stale claims, and this Court should dismiss Anza's SAC under Rule 12, or alternatively Rule 56.


Date: July 6, 2018                                          Respectfully submitted,


                                                           s/D. Scott Hemingway
                                                           D. Scott Hemingway
                                                           Hemingway & Hansen LLP
                                                           1700 Pacific Ave., Suite 4800
                                                           Dallas, TX 75201
                                                           T: 214-292-8300
                                                           shemingway@hh-iplaw.com

                                                           Thomas S. Rice
                                                           Senter Goldfarb & Rice, LLC
                                                           3900 E. Mexico Ave, Suite 700
                                                           Denver, CO 80210
                                                           T: 303-320-0509
                                                           trice@sgrllc.com
                                                           Attorneys for Defendants