IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03135-MEH

ANZA TECHNOLOGIES, INC.,

    Plaintiff,

v.

MUSHKIN, INC.,

    Defendant.

___

# ORDER
___

**Michael E. Hegarty, United States Magistrate Judge**.

    Defendant Mushkin, Inc. seeks to dismiss Plaintiff Anza Technologies, Inc.'s Second Amended Complaint. I find that 35 U.S.C. § 286 bars Anza's damages for patent infringement, because the newly asserted claims do not relate back to those in its First Amended Complaint. Accordingly, I grant Mushkin's motion.

## BACKGROUND

**I.    Facts**

    Anza makes the following relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) in its Second Amended Complaint, which I take as true for my analysis under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    Anza produces and sells products that are used in assembling electronics. Second Am. Compl. ¶ 6, ECF No. 75. Relevant here, Anza manufactures products that minimize electrostatic discharge when connecting integrated circuit chips to other electrical components, such as semiconductor dies and circuit boards. *See id.* Mushkin was involved in the acquisition and sale

of computer memory products until 2012, when it sold this portion of its business to Avant Technologies, Inc. *Id.* ¶¶ 8–9, 12.

Integrated circuit chips are connected to electrical components through various bonding techniques. *Id.* ¶¶ 14–19. "Wire bonding is the method of making interconnections with the integrated circuit and other components using, for example, gold or copper wire and the application of ultra-sonics or heat." *Id.* ¶ 17. The following is an example of a wire bonded semi-conductor die:



*Id.* ¶ 13. To achieve a connection with minimal electrostatic discharge, the wire is placed on the circuit and bonded using a tool tip. *Id.* ¶ 18; U.S. Patent No. 6,354,479, at 8 (issued Mar. 12, 2002) ("'479 patent"), ECF No. 75-3. In 2000, Anza obtained two patents over its wire bonding tool tip. '479 Patent; U.S. Patent No. 6,651,864 (issued Nov. 25, 2003) ("'864 patent"), ECF No. 75-4. The patents include diagrams illustrating the wire bonding tool and tip:



'479 patent, at 4, 5; '864 patent, at.4.

"Flip chip bonding" is a different method for connecting integrated circuit chips to electrical components. Second Am. Compl. ¶ 19. This technique deposits solder bumps on a substrate and then places a "flipped" or "face-down" integrated circuit chip onto the substrate so that the bumps directly connect the circuit and substrate. *Id.* Thus, "[w]ire bonding techniques use 'face-up' chips with a wire connection to each pad. Bump or 'flip chip' microelectronic assembly, on the other hand, is a direct electrical connection of face-down—'flipped'—electronic components onto substrates . . . ." U.S. Patent No. 7,124,927, at 10 (issued Oct. 24, 2006) ("'927 patent"), ECF No. 20-1.

When flip chip bonding, a tool must be used to deposit solder balls and minimize electrostatic discharge. Second Am. Compl. ¶ 20. In 2005, Anza obtained a patent on its flip chip and solder ball placement tool. '927 patent. The following diagram, which is included in Anza's patent, represents the flip chip process using its tool:



*Id.* at 6.

Anza alleges that Mushkin acquired, assembled, imported, or sold products with integrated

3

circuit chips that were manufactured with wire and/or flip chip bonding tools. Second Am. Compl. ¶ 10. Specifically, Anza contends the following Mushkin products must have used its patented bonding tools to comply with industry standards for electrostatic discharge: "REDLINE, BLACKLINE, RIDGEBACK, RADIOACTIVE, SILVERLINE, PROLINE, ESSENTIALS, and APPLE." *Id.* ¶¶ 11, 37. Mushkin stopped manufacturing and selling these products in 2012 when it sold its electronic memory component business to Avant. *Id.* ¶¶ 8–9.

## II. Procedural History

On March 28, 2018, Anza initiated this case against Mushkin in the United States District Court for the Eastern District of California. Compl., ECF No. 1. In an Amended Complaint filed on September 6, 2017, Anza asserted patent infringement claims against Mushkin and Avant. First Am. Compl. ¶¶ 33–37, ECF No. 20. According to Anza, Mushkin and Avant infringed claims one, fourteen, and sixteen of the '927 patent when they manufactured or sold products with integrated circuit chips that had been flip chip bonded to circuit boards with tips that reduce electrostatic discharge. *Id.* ¶ 37. Claims one and fourteen protect Anza's "flip chip bonding tool and ball placement capillary system." '927 patent, at 12–13. Claim sixteen protects "[a] method of utilizing a flip chip bonding tool and ball placement capillary in a microelectric assembly . . . ." *Id.*

On December 20, 2017, the Honorable William B. Shubb severed the claims against Mushkin and Avant and transferred the Mushkin case to this District. ECF No. 40. While pursuing informal resolution of this case, Anza learned that its claims based on the '927 patent were no longer viable. *See* Tr. of Mot. Hearing 12:22–13:3, ECF No. 74. Thus, it dismissed those claims and filed a Second Amended Complaint, which asserts new claims based on different patents. *Id.*; Second Am. Compl. ¶¶ 45–62, ECF No. 75. Specifically, Anza alleges Mushkin infringed claim thirty-nine

4

of the '479 patent and claim twenty-eight of the '864 patent by manufacturing, importing, or selling products that had been wire or flip chip bonded. *Id.* Both of these claims protect methods of using the patented wire bonding tool tip. '479 patent, at 11; '864 patent, at 25.

Mushkin filed the present Motion to Dismiss on July 6, 2018. ECF No. 78. Mushkin first argues that Anza fails to state a violation of 35 U.S.C. § 271(g), because a "method of use" claim is not viable under that statute. *Id.* at 13–15. Next, Mushkin contends 35 U.S.C. § 286's six-year limitation on patent infringement damages bars Anza's claims. *Id.* at 15–21. Further, Mushkin argues the newly asserted claims do not relate back to those in Anza's original or amended complaints. *Id.* Alternatively, Mushkin asks me to convert its motion to one for summary judgment and find that it did not infringe the '479 or '864 patents. *Id.* at 22–23. Anza filed its response brief on July 27, 2018. Resp. to Mot. to Dismiss, ECF No. 79. Mushkin subsequently submitted its reply. Reply in Supp. of Mot. to Dismiss, ECF No. 80.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the

5

allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## **ANALYSIS**

Mushkin argues that 35 U.S.C. § 286 bars Anza's newly asserted claims, because Anza's damages predate the Second Amended Complaint by more than six years. Mot. to Dismiss 9–17, ECF No. 78. Furthermore, Mushkin contends the new claims are not sufficiently similar to those based on the '927 patent to relate back. *Id.* In response, Anza does not dispute that its damages accrued more than six years ago. Resp. to Mot. to Dismiss 13, ECF No. 79. However, Anza contends the new claims relate back, because they involve the same end products and electrical components. *Id.* at 8–13. Additionally, Anza believes proving infringement will require similar evidence. *Id.*

Pursuant to § 286, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. Although the Federal Circuit has not addressed Federal Rule of Civil Procedure 15(c)'s

application to patent cases, district courts generally allow damages on claims filed outside of the six-year period if they relate back to timely asserted causes of action. *See, e.g.*, *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 988–89 (N.D. Cal. 2011). Pursuant to Rule 15(c)(1)(B), new claims relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

District courts have taken various approaches when applying Rule 15(c) to claims based on separate patents. Some courts and commentators have stated that an infringement claim involving a different patent does not relate back as a matter of law. *See Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*, 395 F. Supp. 234, 250–51 (N.D. Ill. 1974) ("An alleged infringement of one patent is not the 'same conduct, transaction or occurrence' as the alleged infringement of another patent."); 6A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1497 (3d ed. 2018) ("[A]mendments alleging . . . the infringement of a different patent . . . may be subject to the defense of statute of limitations because of a failure to meet the transaction standard."). However, the majority of courts analyze whether the newly asserted patent is "part and parcel" of the original controversy. *See Mann Design, Ltd. v. Bounce, Inc.*, 138 F. Supp. 2d 1174, 1178–79 (D. Minn. 2001); *PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, 951 F. Supp. 2d 1083, 1093 (W.D. Ark. 2013). Courts have found claims part and parcel when the original action involves the same parties, same products, and similar technology. *See, e.g.*, *Ramsey Grp., Inc. v. EGS Int'l, Inc.*, 208 F.R.D. 559, 563 (W.D.N.C. 2002) (quoting *In re Medrad, Inc.*, 215 F.3d 1341 (Fed. Cir. 1999) (unpublished table disposition)). However, when the newly asserted claims are not an integral part of those in the original complaint and will not involve the same evidence, § 286 bars damages for the new cause of action. *See Metrologic Instruments, Inc. v. PSC, Inc.*, No. 99-4876 (JBS), 2004 WL 2851955,

at *19 (D.N.J. Dec. 13, 2004); *see also Mann Design, Ltd.*, 138 F. Supp. 2d at 1179.

Although a close call, I find that the claims based on the '479 and '864 patents are not part and parcel of those asserted under the '927 patent. I first provide detailed background on the three patents. Then, I discuss why the claims are not sufficiently similar to relate back.

Anza applied for the '479 patent on February 25, 2000. '479 patent, at 2, ECF No. 75-3. The abstract describes the invention as, "[d]issipative ceramic bonding tips for wire bonding electrical connections to bonding pads on integrated circuit chips and packages." *Id.* In discussing the purpose of the bonding tips, the abstract states, "to avoid damaging delicate electronic devices by any electrostatic discharge, an ultrasonic bonding wedge tool tip must conduct electricity at a rate sufficient to prevent charge buildup, but not at so high a rate as to overload the device being bonded." *Id.* The claim giving rise to the present lawsuit—claim thirty-nine—protects "[a] method of using a bonding tip, comprising: bonding a device using a bonding tip made with a dissipative material that has a resistance low enough to prevent a discharge of charge to said device and high enough to avoid current flow large enough to damage said device." *Id.* at 11 (the language of claim thirty-seven to which claim thirty-nine refers).

In December 2001, Anza applied for the '864 patent, ECF No. 75-4. The abstract for this patent states, "Methods for making and using dissipative ceramic bonding tool tips for wire bonding electrical connections to bonding pads on integrated circuit chips and packages." '864 patent, at 2. Claim twenty-eight protects, "[a] method of using an electrically dissipative bonding tool tip, having a resistance in the range of $10^5$ to $10^{12}$ ohms, comprising: providing the electrically dissipative bonding tool tip; bonding a material to a device; allowing an essentially smooth current to dissipate to the device . . . ." *Id.* at 25.

On April 15, 2005, Anza applied for the '927 patent, ECF No. 20-1. Unlike the '479 and '864 patents, this patent does not involve a wire bonding device. Instead, it protects a tool used while flip chip bonding. *Id.* at 2. The abstract states, "[a] flip chip bonding tool and ball placement capillary system comprising a dissipative material with a resistance low enough to prevent a discharge of a charge to a device being bonded and high enough to avoid current flow to the device being bonded . . . ." *Id.* Claims one and fourteen protect the flip chip bonding and ball placement tool, while claim sixteen protects,

> A method of utilizing a flip chip bonding tool and ball placement capillary in a microelectronic assembly, comprising: providing a bonding machine capable of being equipped with a flip chip bonding tool and ball placement capillary having a tip comprised of a dissipative material, the dissipative material having a resistance low enough to prevent a discharge of a charge to a device being bonded and high enough to stop all current flow to the device being bonded.

*Id.* at 12–13.

Analyzing the factors courts consider when determining whether patent claims relate back, I conclude the newly asserted claims are not part and parcel of the original cause of action. Although the claims involve the same parties, they do not relate to identical products and technology. Regarding the products underlying the patents, the '864 and '479 claims protect a method of using a wire bonding tool, while the '927 claim involved a flip chip bonding and solder ball placement tool. When the '864 and '479 patents were issued, the flip chip bonding tool was not even invented. Additionally, the products produced with the patented processes are not identical. Although Anza's Second Amended Complaint includes six of the infringing products listed in the First Amended Complaint, the Second Amended Complaint adds two new products and omits eleven. *Compare* First Am. Compl. ¶ 32, ECF No. 20, *with* Second Am. Compl. ¶ 37, ECF No. 75. Thus, this case is different from *PerfectVision Manufacturing, Inc.*, in which the plaintiff alleged

that a single device for connecting coaxial cables infringed two separate patents. 951 F. Supp. 2d at 1093–94; *see also Intel Corp. v. Amberwave Sys. Corp.*, 233 F.R.D. 416, 418 (D. Del. 2005) (finding that two patent claims were part and parcel, in part because the claims involved "the same allegedly infringing devices").

The two patents also involve different technologies and processes for bonding integrated circuit chips to electrical components. The '927 patent explains this distinction when it states, "[w]ire bonding techniques use 'face-up' chips with a wire connection to each pad. Bump or 'flip chip' microelectronic assembly, on the other hand, is a direct electrical connection of face-down—'flipped'—electronic components onto substrates, circuit boards, or carriers by means of conductive bumps on a chip bond pad." '927 patent, at 10. In *Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.*, the court found two patents to be part and parcel, because both arose from a common application and "[b]oth concern the same [membrane cell] technology." 87 F.R.D. 398, 403 (W.D.N.Y. 1980). Here, the '927 patent involves flip-chip bonding technology, while the '864 and '479 patents involve wire bonding. To be sure, the two devices have the same purpose—bonding integrated circuit chips to printed circuit boards while minimizing electrostatic discharge. However, because different processes and technologies are used to achieve this purpose, I find they are not part and parcel of one another.

Furthermore, contrary to Anza's contention, proving infringement of the initial and new claims would not involve substantially the same evidence. Because the patents involve different processes, different evidence is required. Proving the '927 patent claims would require evidence of the flip chip bonding method and how the flip chip bonding and ball placement tool was used in making the allegedly infringing products. Conversely, proving the newly asserted claims requires

evidence of the wire bonding process and how a wire bonding tool tip was used to produce the allegedly infringing products.

My finding is supported by the court's decision in *Metrologic Instruments, Inc.*, 2004 WL 2851955. In that case, the court considered whether a parent patent (i.e., a patent that was issued prior to related patents) could be added to a suit in which the plaintiff already alleged infringement of the continuation patents. *Id.* at *19–20. In finding that the newly asserted parent patent did not relate back, the court stated:

> [T]his is not a situation in which the amendment concerned the inclusion of a newly issued continuation patent of the patent-in-suit. Instead, the '342 patent is the parent application to the three later continuations—the '027 patent, the '717 patent, and the '049 patent—all three of which were included in the original Complaint. While it may be said that a Complaint including allegations of infringement of the parent patent (the '342) would provide sufficient notice of infringement of the continuations (the '027, '717, and '049 patents) as well, the reverse does not necessarily hold true.

*Id.* at *20. Similarly, although the '947 patent is a partial continuance of the '864 and '479 patents, it does not follow that the '947 claims gave Mushkin notice of potential claims arising under the older '864 and '479 patents. If Anza had first asserted claims based on the older wire bonding technology and then attempted to add a cause of action for infringement of the flip chip bonding tool, the claim may have related back. However, the reverse "does not necessarily hold true." *Id.*

Anza contends the patents are part and parcel, because the claims in the '864 and '479 patents could incorporate flip chip bonding. Resp. to Mot. to Dismiss 10. At first glance this appears to be a viable argument, since claim thirty-nine of the '479 patent and claim twenty-eight of the '864 patent do not specifically mention wire bonding. However, further review of these patents reveals they concern only wire bonding. Indeed, the abstracts specifically state that the patents protect tips used while "wire bonding electrical connections." '479 patent, at 2; '864 patent,

11

at 2. Furthermore, as Mushkin states (and Anza does not rebut) the flip chip tool had not been invented when these patents were issued. *See* Mot. to Dismiss 11. Thus, it is clear that the claims at issue protect only the use of "an electrically dissipative [wire] bonding tool tip." '479 patent, at 11; '864 patent, at 25.

The upshot is that Anza's First Amended Complaint would not have put Mushkin on notice that Anza would bring claims based on different patents involving an older process and technology. In other words, informing Mushkin that products it manufactured or sold impermissibly used a flip chip bonding tool would not give it notice that some of those same products (and some new products) impermissibly used a wire bonding tool tip. This is especially true, given that Anza's informal infringement contentions dropped claim sixteen of the '947 Patent, which was the most similar claim to those presently asserted. Tr. of Mot. Hearing 12:10–:12, ECF No. 74. Accordingly, the claims do not share sufficient similarities to relate back. Because the latest infringement Anza alleges occurred more than six years before it filed the Second Amended Complaint, § 286 bars all damages for the newly asserted patent infringement claims.[1]

## **CONCLUSION**

In sum, the claims Anza asserts in its Second Amended Complaint are not sufficiently similar to its prior claims to relate back. Because Anza acknowledges that Mushkin's allegedly infringing conduct took place more than six years ago, § 286 precludes damages for Anza's claims. Accordingly, Mushkin's Motion to Dismiss Anza's Second Amended Complaint [filed July 6, 2018; ECF No. 78] is **granted**. The Clerk of the Court is directed to close this case.

---

[1] Because I find this statute precludes Anza's new patent claims, I need not analyze Mushkin's other arguments for dismissal.

Entered and dated at Denver, Colorado, this 28th day of August, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge